[S.F. No. 22869. In Bank. Oct. 18, 1972.]

MIGUEL HINOJOSA, a Minor, etc., Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
W. W. WIEST et al., Respondents.

**COUNSEL**

Fullerton, Lang & Richert, Frank H. Lang, Jr., and Harold L. Williams for Petitioner.

Melvin S. Witt as Amicus Curiae on behalf of Petitioner.

Mullen & Filippi, Frank J. Filippi and Charles F. Lee for Respondents.

**OPINION**

**TOBRINER, J.**—Petitioner seeks review of a decision of the Workmen's Compensation Appeals Board vacating a referee's compensation award on the grounds that by reason of the so-called "going and coming rule" the injury to petitioner did not arise "out of and in the course of employment." We believe that instead of the rigid and automatic "going and coming

rule" posited by the board the cases indicate a more refined definition, specifying with more exactitude the circumstances under which workmen's compensation covers death and injury in transit and those in which it does not. Applying this underlying formula, which the cases express, we hold that the Workmen's Compensation Act covers the injury incurred here and that petitioner should receive the benefits provided by the act.

The facts may be briefly summarized. Petitioner's employer, W. W. Wiest, an operator of seven or eight non-contiguous ranches, employed Miguel Hinojosa as a farm laborer, for thinning and picking peaches, plums, and apricots on his ranches. Upon completion of the work at one ranch, the foreman followed the practice of directing and assigning the workers to a different ranch. Hinojosa worked at this job nine to nine and one-half hours per day, six days a week, and received in payment $1.75 per hour. Like the other laborers, Hinojosa's payment started from the time he arrived at the job and continued until he departed for home, including the time spent in transit between the various Wiest ranches.

The workers, including petitioner, were required to provide their own private vehicles between the fields. The referee specifically found that "the nature of the work made it necessary for an employee to have transportation during the work day as the employer shifted him from one ranch to another."[1] Hinojosa did not know from day to day on which of his employer's fields he would be working or the duration of the work on that field; he needed a motor vehicle not only to get to the fields but for the variable inter-ranch transit necessary to perform the day's work. Thus the working conditions imposed by the employer required that Hinojosa provide himself with some form of automotive transportation.

Hinojosa did arrange for such transportation. Not owning a car of his own, he entered into an agreement to ride with a fellow worker, Raphael

---

[1]Respondent-employer's contention, first raised in his answer to the brief of amicus curiae, that no evidence supports the proposition that he required his workers, either expressly or impliedly, to provide their own transportation for on-the-job use, thus conflicts with the referee's findings. Nor did the appeals board dispute this finding, but instead noted that "the referee in relying upon *Smith* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 814 [73 Cal.Rptr. 253, 447 P.2d 365] states that the employer herein required the employee to have his car available on the job." The appeals board attempted to distinguish the *Smith* case on the ground that petitioner did not *own* the car in which the accident occurred.

The uncontradicted evidence, however, shows that travel between the employer's various farms composed a necessary part of petitioner's employment and that his employer did not provide any transportation for such travel. Thus the finding by the referee that there was an implied requirement that the workers supply their own means of transportation is amply supported by the evidence.

Rodriguez, both to and from work and between the farms during the day. In return, Hinojosa paid Rodriguez $3 per week to share the operating costs of the automobile.

On June 8, 1970, petitioner finished his work on Wiest's "airport ranch," the location to which he was instructed to return the following morning. He left the ranch in Rodriguez's vehicle, and was enroute home, when the car in which he was riding collided with another, causing him the injuries for which he seeks workmen's compensation benefits.[2]

Following a hearing in January 1971, the referee found that the injury to petitioner arose out of and in the course of his employment and awarded compensation. The appeals board, however, vacated the award on the ground that the "going and coming rule" barred the claim and that Hinojosa's injury was therefore noncompensable. The board rejected the argument of the referee that *Smith* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 814 [73 Cal.Rptr. 253, 447 P.2d 365] afforded controlling authority, noting that although the referee found that the employer required the employees to provide their own transportation on the job, Hinojosa was only a passenger, not the owner, of the car in which he sustained injury. Consequently, the board concluded that the *Smith* "exception" to the "going and coming rule" should not be applied to the case.

The question of whether petitioner should obtain compensation therefore turns on the relevance of the so-called "going and coming rule" to the circumstances surrounding his injury. In considering that question, a review of the development of that doctrine will illumine its claimed applicability.

Unlike a number of states,[3] California's "going and coming rule" is not a legislatively enacted limitation, but wholly a judicially created one. (*Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd.* (1967) 66 Cal.2d 944, 946 [59 Cal.Rptr. 622, 428 P.2d 606].) Historically the doctrine appears to have received its first judicial recognition in California in *Ocean*

---

[2] Two other farmworkers, travelling in Rodriguez' automobile under similar arrangements, were killed in the collision. Death claims have been filed by their families and are now pending before the appeals board. (Armando Molina Duran, Deceased, 71 F. 23893, and Jose Trinidad Sandoval, Deceased, 71 F. 23894.)

[3] A number of states have workmen's compensation legislation embodying one of several variations of "going and coming" rules. (See, e.g. Conn. Gen. Stat. Ann., § 31-275 (1958); Kan. Stat. Ann., § 44-508(k) (1963); Mass. Ann. Laws, ch. 152, § 26 (1965); Mich. Stat. Ann., § 17.151 (1968); Minn. Stat. Ann., § 176.011, subd. 16 (1966); N.M. Stat. Ann., § 59-10-12.12 (1953); Tex. Rev. Civ. Stat., art. 8309, § 1b (1967); Wis. Stat. Ann., § 102.03(1)(c)1 (1957).)

*Accident & Guarantee Co.* v. *Ind. Acc. Com.* (1916) 173 Cal. 313 [159 P. 1041]. In deciding the issue of compensability for the death of a ship-worker who fell into the bay on the way to his vessel and drowned, the court noted that the California Workmen's Compensation Act of 1913 (Stats. 1913, ch. 176, p. 279) was modeled after the 1897 English act (Workmen's Compensation Act, 1897, 60 & 61 Vict. ch. 37).

Discussing at length the English cases on the issue, the court concluded that "the governing principles of all the decisions . . . is that . . . there are excluded from the benefits of the act all those accidental injuries which occur while the employee is going to or returning from his work." (*Id.*, at pp. 321-322.) The reason for this limitation, the court declared, lay in the fact that, while travel to and from work grew out of, and was incidental to the employment, an employee going to and from his place of employment was not, pursuant to the requirement of the statute, rendering any *service* to the employer at the time of the accident. Therefore, the court held, such injuries fell outside the scope of the compensation act's coverage.[4]

In the years immediately following the decision in *Ocean Accident,* the courts soon realized that the principle announced in that case did not universally apply. In fact, only three years after the decision, the court in *Judson Mfg. Co.* v. *Ind. Acc. Com.* (1919) 181 Cal. 300, 303 [184 P. 1], disapproved of "this sweeping *dictum* . . . not necessary to the decision of the case," in *Ocean Accident,* "that all those accidental injuries which occur while the employee is going to or returning from his work are excluded from the benefits of the act." The court in *Judson* cautioned against laying down any such absolute dictate, advising instead that the courts should consider each set of facts in light of the words of the statute.

Similarly, in granting compensation to a newspaper boy injured on his way home after delivering his papers, the court in *Makins* v. *Ind. Acc. Com.* (1926) 198 Cal. 698, 703 [247 P. 202, 49 A.L.R. 411], rejected

---

[4]The English Workmen's Compensation Act, on which the cases discussed in *Ocean Accident* rested, contained no clause mandating the courts to construe the act liberally in favor of workmen seeking benefits. The California Workmen's Compensation Act in force at the time did contain a liberal construction clause, which declared simply that the act "shall be liberally construed." (Stats. 1913, ch. 176, § 86, at p. 319.) The court in *Ocean Accident* took no note of that section. The year after that decision, however, the Legislature enacted a revised Workmen's Compensation Act which contained a much more explicit dictate to the courts, providing that the act "shall be liberally construed . . . *with the purpose of extending the benefits of the act for the protection of persons injured in the course of their employment.*" (Stats. 1917, ch. 586, § 69, at p. 877 (italics added).) This mandate is now embodied in Labor Code section 3202.

the petitioner's contention that the "going and coming rule" precluded the award. "Each case," said the court, "must be adjudged by the facts which are peculiarly its own. Industrial accidents are produced by so many varying circumstances that it is rather unusual to find any two or more cases that may be ruled by the same legal precedent."

Despite references, such as the one in *Dellepiani* v. *Ind. Acc. Com.* (1931) 211 Cal. 430, 439 [295 P. 826], to "the 'coming and going rule' as announced by the court in the case of the *Ocean Accident* . . . ," the court in subsequent years continued to recognize that the "rule" was "subject to many exceptions," and that each case should be adjudged on its own unique facts. (*Enterprise Foundry Co.* v. *Ind. Acc. Com.* (1929) 206 Cal. 562, 565 [275 P. 432].) Justice Shenk's dissent in the *Enterprise Foundry* case also marked the first judicial recognition of the relevance of the liberal construction clause of the Workmen's Compensation Act to the issue. (*Id.*, at p. 570.) A growing awareness developed that the beneficent aims of the act could simply not be served by an inflexible judicial fiat which barred compensation for all injuries received going to or coming from work.

By 1942, Justice Traynor, speaking for a unanimous court in *Cal. Cas. Indem. Exch.* v. *Ind. Acc. Com.* (1942) 21 Cal.2d 461 [132 P.2d 815], discarded the requirement on which the rationale of the "going and coming rule" established in *Ocean Accident* had rested—that the employee must, at the time of the injury, be performing service to the employer to be eligible for compensation. In granting compensation to a stenographer injured in an automobile accident in a company car on her way home from work, the court commented, "Petitioner contends that the applicant was not acting within the course of her employment at the time of her injury because she was not performing any service growing out of or incidental to her employment. It is not indispensable to recovery, however, that the employee be rendering service to his employer at the time of the injury." (*Id.*, at p. 465.)

In a namesake case a year later, *Cal. Cas. Ind. Exch.* v. *Ind. Acc. Com.* (1943) 21 Cal.2d 751 [135 P.2d 158], the court recognized that since the rendition of the *Ocean Accident* case, the exceptions to the going and coming doctrine had been "considerably broadened" and the "rule" was "not of inevitable application." Nevertheless, the court noted that the "rule" still presented difficulty in borderline cases of determining whether or not an employee was within the purview of the compensation act. "In view of this state's policy of liberal construction in favor of the employee," a unanimous court held, any reasonable doubt as to the applicability of

the going and coming doctrine must be resolved in the employee's favor. (*Id.,* at pp. 756-760; accord, *Dimmig* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 867 [101 Cal.Rptr. 105, 495 P.2d 433]; *Garzoli* v. *Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 502, 505 [86 Cal.Rptr. 1, 467 P.2d 833].)

Thus the so-called going and coming rule composes no formula of automatic application. We have explained that "this rule . . . has long been recognized [to be] 'subject to many exceptions' [citing cases]. Indeed, one writer in the field of workmen's compensation has suggested that the exceptions have swallowed the rule. (See Horowitz, Note, 14 NACCA L.J. 36.)" (*Schreifer* v. *Industrial Acc. Com.* (1964) 61 Cal.2d 289, 291 [38 Cal.Rptr. 352, 391 P.2d 832].) No less an authority than Dean Pound urged in 1954, "A rule which has developed at least six recognized exceptions since it was announced in England in 1908 is evidently, if not moribund, deserving of overhauling as a whole." (Pound, *Current Articles of Special Interest: Workmen's Compensation* (1954) 14 NACCA L.J. 394, 400.) Commentators have severely criticized it.[5]

The New Hampshire Supreme Court, noting that, "the so-called 'rule' has proved to be of doubtful utility and is riddled with various exceptions," repudiated it in *Brousseau* v. *Blackstone Mills* (1957) 100 N.H. 493, 494-495 [130 A.2d 543, 545]: ". . . [W]e do not regard the going-and-coming rule as either necessary or particularly useful in deciding coverage under the Workmen's Compensation Law."

The tortuous history of the "rule," indeed, writes more than an essay in abstraction; it is rather the record of a raw issue. We believe that two conflicting interests generated the present tension. The interest of the employer lies in his desire to be immune from liability for the employee's injury or death that occurs in the everyday transit from home to office or plant; the

---

[5]See, for example, Horovitz, *Workmen's Compensation: Half Century of Judicial Developments* (1961) 41 Neb.L.Rev. 1, at pages 49-52; Horovitz, *Reviews of Leading Current Cases—The Going and Coming Rule* (1954) 14 NACCA L.J. 36, at pages 41-44; Pound, *Current Articles of Special Interest: Workmen's Compensation* (1954) 14 NACCA L.J. 394, at page 400; Note, *Workmen's Compensation: The Going and Coming Rule and Its Exceptions in Arkansas* (1967) 21 Ark.L.Rev. 414, at page 426; Note, *The Going and Coming Rule* (1965) 41 N.D.L.Rev. 185; Comment (1970) 7 San Diego L.Rev. 174; Comment (1969) 1 St. Mary's L.J. 89, at pages 94-96.

The thrust of these commentators' remarks is that, in response to the existence of the broad and arbitrary rule, the courts have developed increasingly numerous exceptions to avoid its application where the injured employee would otherwise be unjustly deprived of compensation. Not only have we reached the point, they argue, where the exceptions have obliterated the rule, but continuing to focus on the artificially perpetuated "rule" and its categories of exceptions causes the board and the courts to lose sight of the primary statutory test of "in the course of employment."

contrary interest of the employee lies in his desire to be protected from loss by injury or death that occurs in the non-routine transit, or results from the means of transit or the use of a car undertaken for the employer for his benefit at his direct or implied request. Although the basic idea of workmen's compensation conceives that the employee should be protected against work-incurred injury, the concept does not extend to such a point that it would cover every injury suffered after the employee steps from his threshold bound for the office or plant. Workmen's compensation should not include the injury incurred in the public bus on the way to work. On the other hand, as we have set forth above, a multitude of situations clearly call for protection of the employee.

We think a careful analysis of the decisions will develop the formula that reconciles the divergent positions. The cases have suggested a sensible line under workmen's compensation between the extremes of absolute coverage and absolute rejection for all transit-suffered injuries. In substance the courts have held non-compensable the injury that occurs during a local commute enroute to a fixed place of business at fixed hours in the absence of special or extraordinary circumstances. The decisions have thereby excluded the ordinary, local commute that marks the daily transit of the mass of workers to and from their jobs; the employment, there, plays no special role in the requisites of portage except the normal need of the presence of the person for the performance of the work.

On the other hand, many situations do not involve local commutes enroute to fixed places of business at fixed hours. These are the extraordinary transits that vary from the norm because the employer requires a special, different transit, means of transit, or use of a car, for some particular reason of his own. When the employer gains that kind of a particular advantage, the job does more than call for routine transport to it; it plays a different role, bestowing a special benefit upon the employer by reason of the extraordinary circumstances. The employer's special request, his imposition of an unusual condition, removes the transit from the employee's choice or convenience and places it within the ambit of the employer's choice or convenience, restoring the employer-employee relationship.

We shall point out that the cases, distinguishing between the transits that are local commutes to fixed places of business at fixed hours and those that are not, hold injuries compensable that are incurred in transits that do fall into the second category.

Thus, drawing from the decisions arising under the workmen's compensation law and from those fixing the liability of the employer for the tort

of the employee that occurs in the course of employment, this court recently stated in *Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 962 [88 Cal.Rptr. 188, 471 P.2d 988], "The above cases indicate that exceptions will be made to the 'going and coming' rule where the trip involves an incidental benefit to the employer, not common to commute trips by ordinary members of the work force." Applying the same test, the court in *Huntsinger* v. *Glass Container Corp.* (1972) 22 Cal. App.3d 803, 810 [99 Cal.Rptr. 666], rejected defendant's contention that the employee's "trip from the office to his house during which the accident occurred did not involve any incidental benefit to it not common to commute trips by ordinary members of its work force." The court expressed the basis of its ruling: ". . . when a business enterprise requires an employee to drive to and from its office in order to have his vehicle available for company business during the day, accidents on the way to or from the office are statistically certain to occur eventually, and the business enterprise having required the driving to and from work, the risk of such accidents are risks incident to the business enterprise."

This court, likewise, in *Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd.* (1967) 66 Cal.2d 944, 948 [59 Cal.Rptr. 622, 428 P.2d 606], drew the same line between the routine, local commute and the special situation. Relying on that distinction rather than the absence of either the employer's "control of the mode of transportation" or compensation for travel time —tests improperly relied on in *Westinghouse Elec. Corp.* v. *Ind. Acc. Com.* (1966) 239 Cal.App.2d 533 [48 Cal.Rptr. 758]—the court said: "Since the trip to the employer's premises involved no more than a local commute and the employer granted only a nominal allowance for carfare, the court could have concluded that no exceptions to the going and coming rule applied." (P. 948.)

The cases have distinguished between transit to and from a fixed place of business at fixed hours and the special journey. Thus in *Le Febvre* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 386 [71 Cal.Rptr. 703, 445 P.2d 319], the court annulled an award denying compensation for the death of a volunteer fireman while engaged in travel to a station where he was to attend a fire drill. We emphasized that the employee was required to respond to fires at any location and to attend drills at different stations; accordingly we concluded that the travel did "not fall within the going and coming rule, because he had no regular or normal place of employment as contemplated by that rule." (P. 388.)

The lack of fixed hours and the fact that "his hours of work were irregular as compared with most jobs" led the court in *Schreifer* v. *Indus-*

*trial Acc. Com.* (1964) 61 Cal.2d 289 [38 Cal.Rptr. 352, 391 P.2d 832] to hold that the going and coming rule did not apply and that the "special mission" exception governed. "Nearly every employment relationship contemplates that extraordinary needs may arise and must be met. 'Special' means extraordinary in relation to routine duties, not outside the scope of the employment." (*Id.,* at p. 295.)

We now turn to cases that establish that the extraordinary, or, indeed "special," situation does stand apart from the routine one. We allude to the situation in which the employer, because of benefit to himself, places an extraordinary requirement upon the employee, thereby re-establishing the employment relationship in the case of transit, and imposing liability on the employer in the case of the employee's injury. Thus the employer may designate a special authorized route to the job that entails benefit to the employer but hazard to the employee; the worker must submit to dangers that he otherwise would have the choice of avoiding; such travel is no routine commute, and injury in the course of it is compensable (*Judson Mfg. Co.* v. *Ind. Acc. Com.* (1919) 181 Cal. 300 [184 P. 1]; 1 Larson, The Law of Workmen's Compensation (1968) § 15.13). A similar legal consequence follows an employee's injury upon a road over which the employer exercises control (*Smith* v. *Industrial Acc. Com.* (1941) 18 Cal.2d 843 [118 P.2d 6]; 1 Larson, *supra,* § 15.43).

An obvious departure from the routine commute is the "special mission" in which the employee goes to or comes from a particular designated destination at the request or invitation of the employer. In *Dimmig* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860 [101 Cal.Rptr. 105, 495 P.2d 433], an employee attended night classes at the instance of his employer; we held that "when the employee engages in a special activity which is within the course of his employment, and which is reasonably undertaken at the request or invitation of the employer, an injury suffered while traveling to and from the place of such activity is also within the course of employment and is compensable." We noted that "The school attendance was extraordinary in relation to Dimmig's routine duties at Memorex. In addition, Dimmig's travel to and from the college was not travel to and from his normal place of work at the normal hour." (See *Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1963) 221 Cal.App.2d 140 [34 Cal.Rptr. 206]; *State Comp. Ins. Fund* v. *Ind. Acc. Com.* (1928) 89 Cal.App. 197 [264 P. 514]; 1 Larson, *supra,* § 16.10.) Clearly the workmen's compensation law likewise covers the injury if the employer makes substantial payments to the employee for his travel time to a distant location (*Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd.* (1967) 66 Cal.2d 944 [59 Cal.Rptr. 622, 428 P.2d 606]; *Kobe* v. *Industrial Acc.*

*Com.* (1950) 35 Cal.2d 33 [215 P.2d 736]; 1 Larson, *supra,* § 16.20) or if the employer himself *provides* the transportation (*Harlan* v. *Ind. Acc. Com.* (1924) 194 Cal. 352 [228 P. 654]; 1 Larson, *supra,* § 17.10).

■ Finally, the situation which reflects the instant one is that in which the employee is expressly or impliedly required or expected to furnish his own means of transportation to the job (*Smith* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 814 [73 Cal.Rptr. 253, 447 P.2d 365]). Larson states that in this instance: ". . . the obligations of the job reach out beyond the premises, making the vehicle a mandatory part of the employment environment, and compel the employee to submit to the hazards associated with private motor travel, which otherwise he would have the option of avoiding. Since this is the theory, it is immaterial whether the employee is compensated for the expenses of the trip." (1 Larson, The Law of Workmen's Compensation, *supra,* § 17.50.)

Once we have defined the different types of situations, once we have cut away the underbrush and seen the trunks of the principles, the decision is not difficult. Thus the instant case falls within the category of the extraordinary journey that varies from the norm because the employer for some special reason of his own requires a different transit, or means of transit or use of a car. The factual situation is well described by the referee in his opinion on decision and not disputed by the appeals board: "In the instant case, the nature of the work made it necessary for an employee to have transportation during the work day as the employer shifted him from one ranch to another. It is clearly and directly to the employer's benefit that the employees furnish this transportation, since he in no way provided it himself. The employer, in fact, acknowledged the benefit to himself by paying the employees' wages for the time of travel during the work day. [¶] The requirement for furnishing transportation, while not express as in the *Smith* case, was clearly implied."

Indeed, we think the present case is controlled by the principle of *Smith.* There the employer "instructed Smith to have his car available on the job every morning" (p. 821) so that "he could visit his clients on field days . . . and . . . would be available to see clients in cases of emergency on regular office days." (P. 816.) We held that the requirement that the employee furnish his means of transportation effected a resumption of the employment relationship. Smith suffered fatal injuries in an accident which occurred while he was en route from his home to his office. We said that the "relationship resumes no less effectively when the employer requires that the employee engage in conduct, whether prior to the workday or after it, whether on the premises of that employer or

away from them, that inures to the benefit of the employer. The employment relationship can hardly be severed during the performance of an act required by the employer for his own purposes and advantage. [¶] In the instant case the employer clearly benefited from Smith's bringing the car to work."

We concluded that "Surely in this day of a highly motorized society we cannot cast the going and coming rule as a protective cloak over the shoulders of the employer who, for his own advantage, demands that the employee furnish the car on the job. Smith's obligation reached out beyond the employer's premises, and, in driving his car to and from them, he did no more than fulfill the condition and requirement of his employment." The necessity for the use of a car to go from one to another of his clients in the case of the social worker in *Smith* is no different than the necessity for the use of a car to go from one to another of the employer's separate ranches in the instant case.[6]

Although in the instant case the requirement for the car was implicit rather than express, the use of a vehicle can be "an implied or express condition of . . . employment." (*Huntsinger* v. *Glass Container Corp.* (1972) 22 Cal.App.3d 803, 809 [99 Cal.Rptr. 666].) The condition implicit in the employment itself dictated the use of car transport; no words of the employer were necessary; the situation, like res ipsa loquitur, spoke for itself. To get from one noncontiguous field to another within the work day *required* the use of automobile transport. Since the employer furnished no such private transport the employer in effect imposed the requirement that the employees themselves procure such transport in the form of cars driven to and from work each day to one of the seven or eight fields

---

[6]The decision in *Smith* accords with an impressive line of cases from other jurisdictions which have held that when the use of a private vehicle is an integral part of an employee's duties, an injury occurring while that vehicle is being transported to or from work occurs "in the course of employment." (See, e.g., *State Department of Highways* v. *Johns* (Alaska 1967) 422 P.2d 855, fn. 22 at p. 861; *Pittsburgh Testing Laboratories* v. *Kiel* (1960) 130 Ind.App. 598 [167 N.E.2d 604]; *Davis* v. *Bjorenson* (1940) 229 Iowa 7 [293 N.W. 829]; *Willis* v. *Cloud* (La.App. 1963) 151 So.2d 379, affd. mem., 244 La. 623 [153 So.2d 415]; *Borak* v. *H. E. Westerman Lumber Co.* (1953) 239 Minn. 327 [58 N.W.2d 567]; *Begley* v. *International Terminal Operating Co.* (1971) 114 N.J.Super. 537 [277 A.2d 422]; *Shafran* v. *Board of Education, Central Sch. Dist.* (1966) 25 App.Div.2d 336 [269 N.Y.S.2d 593]; *King* v. *State Industrial Accident Commission* (1957) 211 Ore. 40 [309 P.2d 159], affd. on reh. 211 Ore. 71 [315 P.2d 148]; *Bailey* v. *Utah State Industrial Commission* (1965) 16 Utah 2d 208 [398 P.2d 545]; 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1970) § 9.03[3][c]ii; 1 Larson, The Law of Workmen's Compensation, *supra,* § 17.50.)

designated by the foreman. The implied requirement here became as concrete a part of the contract of employment as the express requirement in *Smith*.

The fact that petitioner did not *own* the automobile in which the accident occurred does not render the rationale of *Smith* inapplicable. So to hold would mean that petitioner's co-worker, Rodriguez, the driver of the vehicle, would be entitled to workmen's compensation benefits while petitioner would not. Yet both shared the burden and expense of providing the on-the-job vehicle necessary to their employment. Both equally performed the service to the employer of supplying an essential tool of the trade—their own transportation between the various Wiest fields.

Two co-employees, injured in the same accident and under identical employment circumstances, cannot logically be treated differently under the workmen's compensation law merely because one is the legal owner of, and the other a passenger in, the vehicle involved in the accident. (Compare *Stumar* v. *Industrial Acc. Com.* (1936) 16 Cal.App.2d 429 [60 P.2d 557] with *Wiley* v. *Ind. Acc. Com.* (1936) 16 Cal.App.2d 756 [60 P.2d 558]; see also, 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, *supra,* § 9.03[1][c].) After noting the "going and coming rule" and its exceptions, Hanna comments, "Likewise, injuries sustained in the vehicle of a fellow employee or third party may, *subject to the same rules,* be compensable." (Italics added.)

In conclusion, we hold that the instant case clearly differs from the normal routine commute; it is instead the extraordinary situation in which the job is structured, and dependent upon, transportation from one place of work to another so that the use of an instrument of such transportation is a requisite of employment. The employer could have provided, at his own expense, company vehicles to transport the workers between his various farms during their workday. His failure to do so made it necessary for the workers to supply their own on-the-job transportation. Thus petitioner made use of the car from his residence to the first ranch, and thereafter from ranch to ranch and finally from ranch to his residence because the car was an essential requirement of the job; the presence of the car was requisite to performance of the job; the worker was impliedly required to bring the car to the job and to take it from the job. Thus the injury suffered in the car was covered by the Workmen's Compensation Act.

The decision of the Workmen's Compensation Appeals Board is an-

nulled. The cause is remanded to that board for proceedings consistent with the views herein expressed.

Wright, C. J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.