[Civ. No. 2310. Fifth Dist. Oct. 2, 1974.]

BILLY GENE HINSON, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
GIFFEN, INC., et al., Respondents.

COUNSEL

F. A. Aycock, Jr., Levy, Van Bourg & Hackler and Joseph B. Purteet for Petitioner.

Dawson, Gillaspy & Ninnis and William R. Ninnis for Respondents.

OPINION

FRANSON, J.—Billy Gene Hinson seeks review of a decision of the Workmen's Compensation Appeals Board denying his petition for reconsideration of the referee's finding that by reason of the "going and coming rule" his injury did not arise out of and occur in the course of his employment. Hinson was injured on January 5, 1973, when his pickup collided with another vehicle on Highway 33 as he was driving to work. For the reasons hereafter expressed, we hold there is substantial evidence to support the board's decision.

The facts pertaining to Hinson's employment as gleaned from a sparse record are as follows: Hinson drove a tractor and did maintenance work on tomato pickers on a large ranch operated by Giffen, Inc. He reported for work at 6 a.m. at a headquarters shop on the ranch which was located approximately two miles from his home and was paid on an hourly basis from the time he reported to work. The employer had a pickup available which the foreman would use to take the tractor drivers to the fields and to return them to the shop at the end of the day's work. However, at times, Hinson and the other drivers would use their own cars to get to the fields if they had driven them to work. Hinson testified that the foreman would "rather" that the employees take their own cars to the tractors, thus avoiding the necessity of his having to take them to and from the fields. Hinson also testified that the use of his own car saved him a trip back to the shop after he finished work in the fields; if he had his own car he could go directly home from where his tractor was located. He said, however, that he did not take his own car to the fields if the foreman didn't ask him to.[1] Hinson's employer did not pay him for any of the mileage he drove in his own car nor did he pay him for gas or oil he used.

---

[1]"Q. But if the boss drove you out to the field, then you'd have to come to the shop.

"A. Yes. We unload in the shop before getting in your own car and traveling home.

"Q. So there is a benefit to drive out to the field so you could drive directly home.

Hinson kept six to ten wrenches of different sizes in his pickup which he used on the job. The wrenches were carried by hand with a chain through them and kept on the tractor during his working hours. Hinson took the tools home each night in his car to keep them from being stolen.

Our Supreme Court has observed that the tension underlying the so-called "going and coming rule" is generated by the legitimate interests of the employer to be immune from liability for the employee's injury or death that occurs in the everyday transit from home to work, and the valid competing interests of the employee for protection where the accident occurs in nonroutine transit, or where the employee uses a means of transportation undertaken for his employer's benefit. (*Hinojosa* v. *Workmen's Comp. Appeals Bd.,* 8 Cal.3d 150, 156-157 [104 Cal.Rptr. 456, 501 P.2d 1176].) The court said: "We think a careful analysis of the decisions will develop the formula that reconciles the divergent positions. . . . The decisions [exclude] the ordinary, local commute that marks the daily transit of the mass of workers to and from their jobs; the employment, there, plays no special role in the requisites of portage except the normal need of the presence of the person for the performance of the work. . . . On the other hand, many situations do not involve local commutes enroute to fixed places of business at fixed hours. *These are the extraordinary transits that vary from the norm because the employer requires a special, different transit, means of transit, or use of a car, for some particular reason of his own.* When the employer gains that kind of a particular advantage, the job does more than call for routine transport to it; it plays a different role, bestowing a special benefit upon the employer by reason of the extraordinary circumstances. *The employer's special request, his imposition of an unusual condition, removes the transit from the employee's choice or convenience and places it within the ambit of the employer's choice or convenience, restoring the employer-employee relationship."*

"A. He'd rather for you to drive your own car.
"Q. The boss wanted you to take your car out to the field if you brought your own vehicle.
"A. He wanted us to take our own vehicle.
"Q. But the boss always had transportation available to take all the men to the field out to the tractors, is that correct?
"A. He had the pickup there at the shop. He drive [*sic*]—.
"Q. He would drive all the fellows out to the field.
"A. He would if you didn't—if he didn't ask you to take your car.
"Q. Unless the employees wanted to take their own car?
"A. Unless the employees wanted to take their car where they wouldn't have to drive all over the ranch to get home.
"Q. That was your preference to drive.
"A. A lot of time, yes. But most —. I wouldn't take my pickup if he didn't ask me."

(Italics added.) (*Hinojosa, supra,* 8 Cal.3d at p. 157.) Mr. Hinojosa worked as a farm laborer on seven or eight noncontiguous ranches operated by his employer. While he was enroute home after leaving work the car in which he was a passenger collided with another vehicle causing him injuries for which he sought workmen's compensation benefits. In holding that the injury to Hinojosa was compensable as not within the "going and coming" rule, the court observed that to get from one field to another within the work day required the use of automotive transportation and it was directly to the employer's benefit that Hinojosa furnish his own transportation *since the employer did not furnish it himself.* The court stated, "Although . . . the requirement for the car was implicit rather than express, the use of a vehicle can be 'an implied or express condition of . . . employment.' [Citation.]" (8 Cal.3d at p. 161.)

Unlike Hinojosa, Mr. Hinson was not required to furnish his own transportation from the shop to the fields; his employer made available a company pickup to transport him to his tractor. Thus, it cannot be said that Hinson's use of his own car was a condition of his employment.

Hinson contends, however, that because the foreman would "rather" **that the drivers take their cars to the fields if they had driven them to work** on a particular day, we are compelled to find that the use of his car was an implied requirement of the job. He argues in essence that this expression of preference on the part of the foreman mandated the use of his own car, thus conferring a special benefit on the employer and extending the employment relationship to the daily transit to and from his home. We believe, however, that this testimony, at best, raises a factual question as to whether the employees were required to use their own cars; Hinson's other testimony shows that the company pickup was available to take the drivers to the fields if they didn't bring their cars to work, and the employees preferred to take their cars to the fields to avoid having to return to the shop after completing the day's work. From the latter evidence, a reasonable inference may be drawn that the employees' use of their cars on the job arose as a matter of convenience to all concerned, rather than at the employer's request and for its particular advantage.

We read *Hinojosa* to mean that an injury occurring during a particular transit from the home to the job is compensable when the transportation is accomplished by means imposed either as a condition of employment, such as the requirement that the employee use his own car during working hours, or that he use his own car at the special request of or as an accommodation to his employer. A practice adopted for the mutual convenience of the employer and the employee and left to the

discretion of the employee (if he didn't want to take his car to the field he would be taken in the company pickup), does not rise to the status of a requirement of employment, nor does it establish such a "special" advantage to the employer as to extend the employer-employee relationship to the regular commute from the home to the place of work. (See *Hinojosa, supra,* 8 Cal.3d at p. 159.)

■ Nor does the fact that Hinson took his tools home every night make the use of his car a condition of his employment or constitute such a special advantage or service to his employer as to extend the employment relation off of the job site. The taking of the tools home each night was for Hinson's personal benefit and convenience and, thus, was merely incidental to his employment. (Cf. *Eby* v. *Industrial Acc. Com.,* 75 Cal.App. 280, 282 [242 P. 401]; see also 8 Schneider's Workmen's Compensation Law, § 1739, pp. 203-207.)

■ We emphasize that in reviewing a decision of the Workmen's Compensation Appeals Board we may not redetermine factual questions decided on the basis of substantial evidence. (Lab. Code, §§ 5952-5953; *Granco Steel, Inc.* v. *Workmen's Comp. App. Bd.,* 68 Cal.2d 191, 196 [65 Cal.Rptr. 287, 436 P.2d 287].) ■ While the question of whether Hinson was injured in the course of his employment is one of law, the subsidiary questions of whether he was required to use his own car as a condition of his employment, and whether the use of his car in going from the shop to his tractor was such a "special" circumstance as to extend the employment relationship to the daily transit from and to his home, under the record before us, are questions of fact. There is substantial evidence in the record to support the board's decision.

The order of the Workmen's Compensation Appeals Board is affirmed.

Brown (G. A.), P. J., and Gargano, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied November 27, 1974.