Filed 9/12/13  Wang v. Core General Contractor CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| DONGSHENG WANG et al., | H038335 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. CV166834) |
| v. | |
| CORE GENERAL CONTRACTOR, INC., | |
| Defendant and Respondent. | |

## I.  INTRODUCTION

Plaintiffs Dongsheng Wang and Xingdi Meng sued defendant Core General Contractor, Inc. (Core) after its employee, Mitulkumar K. Patel, allegedly struck Wang in a crosswalk while Patel was driving to work.  Core moved for summary judgment on the ground that it was not vicariously liable for the conduct of its employee, because Patel was driving his personal vehicle to work at the time of the accident.  The trial court granted the motion.  Plaintiffs filed a motion for a new trial, which the court denied.

On appeal, plaintiffs contend that the trial court erred in granting Core's motion for summary judgment and in denying their motion for a new trial because triable issues of material fact exist regarding the employee's use of his vehicle for work.

For reasons that we will explain, we will affirm the judgment in Core's favor.

## II.  BACKGROUND

### A. *The Accident*

Patel was the driver of the vehicle that hit Wang in January 2010.  At the time of the accident, Patel was employed by Core and was driving from home to work in his wife's car.

### B. *The Complaint*

Wang and Meng filed a complaint against Patel and others.  Plaintiffs alleged that Patel drove and struck Wang who was walking in a crosswalk.  Plaintiffs further alleged that Patel was an employee of the other defendants and was at all times acting within the course and scope of his employment.  In the first cause of action, Wang alleged that he suffered personal injuries as a result of the negligence of defendants.  In the second cause of action, Wang's wife Meng sought damages for loss of consortium.  Plaintiffs later filed an amendment to the complaint substituting Core for one of the Doe defendants.[1]

### C. *Core's Motion for Summary Judgment*

Core filed a motion for summary judgment, arguing that "Wang's claims against Core necessarily fail as a matter of law."  Core contended that an employer is liable for the acts of an employee only if the employee is acting within the course and scope of employment, and that an employee is not acting with that scope when going to or coming from work.  Core argued that Patel "was merely on his way to the office" when the accident occurred.  Core further contended that the " 'required vehicle exception' " to the " 'going and coming' rule" did not apply, and that Patel's use of his car did not confer an incidental benefit on the company.  Core argued that it did not require Patel to use his car, that it was his "own choice to use his vehicle for work purposes," and that he could have used the company vehicle, a courier service, or public transportation.  Core also argued

---

[1] Of the defendants named in plaintiffs' complaint, only Core is a party to this appeal.

2

that its payment of Patel's gas expenses on a few occasions was an insufficient basis to invoke the "required vehicle exception."

In opposition to the motion, plaintiffs argued that they had submitted sufficient evidence to create triable issues of fact that precluded summary judgment. Plaintiffs contended that Patel needed his car for work, that his job description required him to drive to the building department, that the company vehicle was not always available to him, and that Core benefitted from Patel using his own vehicle rather than public transportation.

Core reiterated in its reply brief that Patel was commuting to work at the time of the accident, was not engaged in any work activities at that time, was not required to have a personal vehicle at work, and had the option of using the company vehicle. Core contended that summary judgment was warranted based on the absence of any triable issue of fact.

**D.** *The Trial Court's Order Granting the Motion for Summary Judgment*

After a hearing on Core's motion, the trial court took the matter under submission and subsequently filed a written order granting the motion for summary judgment. In the order, the court determined that Core had met "its initial burden to demonstrate that . . . it is not vicariously liable for Patel's acts during his commute because the undisputed facts demonstrate that Patel was not acting within the scope of employment at the time of the subject incident and that it did not derive an incidental benefit from Patel's trip that was 'sufficient enough to justify making the employer responsible for the risks inherent in the travel.' " The court further determined that plaintiffs did "not present facts that demonstrate that any incidental benefit to Core was 'sufficient enough to justify making the employer responsible for the risks inherent in the travel,' " and that any conflicting inferences to be drawn from plaintiff's evidence did "not present a triable issue of

3

material fact as to Core's vicarious liability." Judgment was subsequently entered in favor of Core.[2]

E. *Plaintiffs' Motion for a New Trial*

Plaintiffs filed a motion for a new trial, contending that the trial court made an error in law by granting Core's motion for summary judgment. Plaintiffs argued that in granting Core's motion, the court used an incorrect legal standard with respect to the "vehicle use exception," did not properly apply the exception to the evidence, and erroneously failed to find triable issues of fact. In opposition, Core contended that plaintiffs' new trial motion "simply rehashe[d]" the arguments plaintiffs had made in opposition to the summary judgment motion, and that the court did not commit an error in law in determining that summary judgment was warranted. After a hearing, the trial court denied plaintiffs' motion for a new trial.

Plaintiffs filed a timely notice of appeal from the judgment.

### III. DISCUSSION

A. *The Motion for Summary Judgment*

On appeal, plaintiffs contend that the trial court erred in granting Core's motion for summary judgment because triable issues of fact exist concerning whether Core was vicariously liable under the doctrine of respondeat superior for Patel's conduct in injuring Wang. Before addressing plaintiffs' contentions, we will outline the applicable standard

---

[2] As we have noted, in the complaint Wang alleged a claim for personal injury against Core, and Meng alleged a claim for loss of consortium. Core's motion for summary judgment clearly challenged Wang's personal injury claim. Although it is not entirely clear from Core's motion, or from the judgment itself, whether the claims of *both* plaintiffs were encompassed in the motion and judgment, plaintiffs have made arguments in the trial court and in this court based on the assumption that the motion and judgment applied to both of them. Further, plaintiffs recognize that a spouse's loss of consortium claim is dependent on the existence of a cause of action for tortious injury to the other spouse. (*LeFiell Manufacturing Co. v. Superior Court* (2012) 55 Cal.4th 275, 285 (*LeFiell*).) Under the circumstances of this case, we will construe the judgment as against both plaintiffs.

4

of review and set forth the general principles concerning an employer's liability for an employee's tort.

### 1. The Standard of Review

The standard of review for an order granting a motion for summary judgment is de novo.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).)  The trial court's stated reasons for granting summary judgment are not binding on the reviewing court, "which reviews the trial court's ruling, not its rationale.  [Citation.]"  (*Ramalingam v. Thompson* (2007) 151 Cal.App.4th 491, 498.)

In performing our independent review, we apply the same three-step process as the trial court.  "Because summary judgment is defined by the material allegations in the pleadings, we first look to the pleadings to identify the elements of the causes of action for which relief is sought."  (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 159 (*Baptist*).)

"We then examine the moving party's motion, including the evidence offered in support of the motion."  (*Baptist*, *supra*, 143 Cal.App.4th at p. 159.)  A defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action.  (Code Civ. Proc., § 437c, subd. (o); *Aguilar*, *supra*, 25 Cal.4th at p. 850.)  If the defendant fails to make this initial showing, it is unnecessary to examine the plaintiff's opposing evidence and the motion must be denied.  However, if the moving papers make a prima facie showing that justifies a judgment in the defendant's favor, the burden shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, at p. 849.)

In determining whether the parties have met their respective burdens, "the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences

5

[citations], in the light most favorable to the opposing party." (*Aguilar*, *supra*, 25 Cal.4th at p. 843.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id*. at p. 850.) Thus, a party " 'cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact. [Citation.]' [Citation.]" (*Dollinger DeAnza Associates v. Chicago Title Ins. Co.* (2011) 199 Cal.App.4th 1132, 1144-1145 (*Dollinger*).)

## 2. Employer Liability for the Tort of an Employee

Under the doctrine of respondeat superior, "an employer is vicariously liable for the torts of its employees committed within the scope of the employment. [Citation.]" (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296.) The policy goals of the doctrine are to "prevent[] future injuries, assur[e] compensation to victims, and spread[] the losses caused by an enterprise equitably." (*Id*. at p. 304; accord, *Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1004 ["the central justification for respondeat superior" is that "losses fairly attributable to an enterprise— those which foreseeably result from the conduct of the enterprise—should be allocated to the enterprise as a cost of doing business"].)

"An employee is not considered to be acting within the scope of employment when going to or coming from his or her place of work." (*Anderson v. Pacific Gas & Electric Co*. (1993) 14 Cal.App.4th 254, 258 (*Anderson*).) "This is based on the concept that the employment relationship is suspended from the time the employee leaves work until he or she returns, since the employee is not ordinarily rendering services to the employer while traveling. [Citations.]" (*Baptist*, *supra*, 143 Cal.App.4th at p. 162.)

"The courts, however, have recognized several exceptions to the 'going and coming' rule." (*Ducey v. Argo Sales Co*. (1979) 25 Cal.3d 707, 722 (*Ducey*).) In particular, "exceptions will be made to the 'going and coming' rule where the trip

6

involves an incidental benefit to the employer, not common to commute trips by ordinary members of the work force." (*Hinman v. Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 962 (*Hinman*).) Among the types of cases in which this situation may arise are "cases where the employer requires an employee to furnish a vehicle of transportation on the job. [Citations.]" (*Ducey*, *supra*, at p. 723.) "Presumably, ordinary members of [an employer's] work force would not be required to use their vehicles in company business and would not, therefore, be required to drive their vehicles to and from work. The means by which they travel to and from work is a matter of complete indifference to [the employer]." (*Huntsinger v. Glass Containers Corp.* (1972) 22 Cal.App.3d 803, 810 (*Huntsinger*).) In contrast, when an employer requires an employee to have a personal vehicle available at work, the employee's commute to and from work in that vehicle is "incidentally beneficial to [the employer] in a manner not common to commute trips by ordinary members of its work force. In other words, when a business enterprise requires an employee to drive to and from its office in order to have his vehicle available for company business during the day, accidents on the way to or from the office are statistically certain to occur eventually, and, the business enterprise having required the driving to and from work, the risk of such accidents are risks incident to the business enterprise." (*Ibid.*)

"Thus in *Hinman*, *supra*, it was held that the 'going and coming' rule did not apply where the employer had made the commute part of the workday by compensating the employee for his travel time. Similarly, in *Huntsinger*[, *supra*], an employee was required to drive to and from work in order to have his vehicle available for company business. The court held that these circumstances, if confirmed by a jury, would support a finding that the employee's commute conferred an incidental benefit on the employer; a jury could therefore find that the commute fell within the scope of employment." (*Lazar v. Thermal Equipment Corp.* (1983) 148 Cal.App.3d 458, 462-463 (*Lazar*).) Likewise, in *Lazar*, there was "uncontroverted evidence that [the employer] derived a special benefit

7

from [the employee's] commute. This commute was made in the company vehicle, and an object of the commute was to transport the vehicle to [the employee's] home where it would be at the ready for business use in case [the employee] received emergency after-hours calls for repair from the employer's customers. In traveling to and from work, [the employee] was thus acting in the scope of his employment, conferring a tangible benefit on his employer" and the court thus determined that the "going and coming" rule was inapplicable. (*Id.* at p. 463.)

The employer's requirement that an employee use a personal vehicle may be express or implied. (*Huntsinger*, *supra*, 22 Cal.App.3d at p. 809; accord *Hinojosa v. Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 161 (*Hinojosa*); see *Hartline v. Kaiser Foundation Hospitals* (2005) 132 Cal.App.4th 458, 468 [workers' compensation cases may be helpful in determining an employer's vicarious liability for employee torts although such cases are not controlling precedent when liability is based on respondeat superior principles].) For example, the condition may be implied where the employee's duties require "the use of automobile transport" and the employer "furnished no such private transport." (*Hinojosa*, *supra*, at p. 161.)

An employer's payment of a travel allowance to an employee "does not automatically make it vicariously liable" to a third party injured by a traveling employee. (*Anderson*, *supra*, 14 Cal.App.4th at p. 260; see also *id.* at p. 261; *Caldwell v. A.R.B., Inc.* (1986) 176 Cal.App.3d 1028, 1042 (*Caldwell*).)

"Although it is generally a question of fact whether conduct is within the scope of employment, if the facts are undisputed and no conflicting inferences are possible, the question is one of law. [Citation.]" (*Baptist*, *supra*, 143 Cal.App.4th at p. 162.)

### 3. Analysis

To determine whether defendant Core met its initial burden to show that it was not vicariously liable under the doctrine of respondeat superior for Patel's conduct in

8

connection with the accident, we first examine the facts presented in Core's motion for summary judgment.

At the time of the accident, Patel was driving from home to work in his wife's car. Patel was employed by Core as a project manager and was responsible for the supervision, planning, review, and oversight of construction projects. When a construction project was ongoing, Patel reported directly to an office that was set up in a trailer on the site of the project. When a construction project was not ongoing, he reported to Core's main office on South Market Street in San Jose. The accident occurred while Patel was driving to the South Market Street office. Patel did not make any business calls on his way to work on the morning of the accident, he did not have any blueprints in the car, and he did not make any stops for work-related items.

Core's president stated in a declaration in support of the motion that Patel's job duties did not require him to use his personal vehicle for work-related purposes, Core did not explicitly or implicitly require Patel or any of its employees to use their own vehicle for work-related purposes, and Core did not rely on Patel's use or access to his car as a condition of employment. Patel similarly stated in a declaration in support of the motion, "I did not use my own vehicle for work related purposes on a regular basis, nor did my job at Core ever require me to. It is not a requirement of my employment at Core that I use my own vehicle for work related purposes."

Core has a company vehicle for employees to use for work-related purposes, and the vehicle was available for Patel's use. Core also allows employees to use a courier service to deliver or pick up documents from various government offices. Patel could have also taken public transportation for work-related errands. Patel understood that he could use the company vehicle, public transportation, or a courier service to accomplish work errands. In the five years prior to the accident, Patel used the company credit card for gas on four occasions when he chose to use his own vehicle for work. The amounts ranged from $20 to approximately $64.

9

These facts show that when the accident occurred, Patel was going to his place of work, during which time an employee generally "is not considered to be acting within the scope of employment." (*Anderson*, *supra*, 14 Cal.App.4th at p. 258.) The facts also show that Patel was not required by Core to use a personal vehicle for work-related duties, a requirement that might have made Patel's commute to work incidentally beneficial to Core and his use of a personal vehicle within the scope of employment. (See *Huntsinger*, *supra*, 22 Cal.App.3d at p. 810.) Instead, Core had or allowed alternative means by which Patel could complete work-related tasks, including by using a company vehicle. (See *Hinojosa*, *supra*, 8 Cal.3d at pp. 161-162.) Further, Core's payment of Patel's gas on a few occasions did "not automatically make it vicariously liable" to plaintiffs. (*Anderson*, *supra*, at p. 260; see also *id*. at p. 261; *Caldwell*, *supra*, 176 Cal.App.3d at p. 1042.)

Based on the facts presented in the motion for summary judgment, Core met its burden of making a prima facie showing that Patel was not acting within the scope of his employment at the time of the accident. "The burden then shifted to the plaintiffs to show that a triable issue of one or more material facts existed as to their theory that [Core] was vicariously liable under a theory of respondeat superior. [Citations.]" (*Baptist*, *supra*, 143 Cal.App.4th at p. 163.)

On appeal, plaintiffs contend that triable issues of fact exist regarding Patel's use of his vehicle for work. Plaintiffs assert that the evidence shows Patel was required to travel as part of his employment duties, the company vehicle was not available to him, and he needed his car for work.

With respect to employment-required travel, plaintiffs produced the following evidence. Patel was required to visit the local building department as needed, which was on average once or twice during a construction project. It was important to have a good relationship with the building department. Patel also traveled to Core's South Market Street office once or twice per month while he was stationed at a jobsite for a

10

construction project. Further, during the preconstruction process of the project that he was working on when the accident occurred, Patel drove to an owner, architect, and contractor meeting every other Saturday from 2008 until around September 2009. It was known that project managers were using their personal vehicles to facilitate getting their jobs done.

Regarding the circumstances surrounding the company vehicle, plaintiffs produced the following evidence. Core's employee manual does not identify the transportation options for employees. Core has one company truck. Core does not require employees to use the company truck. At times, there have been two construction projects ongoing at the same time due to the "overlap" of projects. The company truck is parked either at Core's office when it is not in use, or at the jobsite where it may stay for a period time. No one at the company was responsible for monitoring the use of the truck, and there was no written document explaining how employees could obtain access to it. The employees' use of the truck was by a "fairly informal arrangement." The employees "figure out who has . . . the keys and go find the guy who has . . . the keys and borrow the truck." The president of Core did not know how a project manager would use the truck if the project manager is at a jobsite and the truck is parked at the office. A project manager may seek reimbursement from Core for using a personal vehicle to travel to meetings and to the building department, and the reimbursement would be a cost of the project.

Regarding Patel's need for the vehicle, plaintiffs provided the following evidence. Patel testified at his deposition that he would drive his own car from a jobsite to the office or the building department, and that he "need[ed]" his car for work. In a subsequent declaration in opposition to the motion for summary judgment, Patel explained that he "need[ed] it to respond to issues that came up at job sites and the building department." He further stated that he did not use public transportation to go to the building department because taking his car "was much easier and more efficient."

11

Patel also stated that he never used the company truck because he "didn't want to waste [his] time calling around to find out where the truck was, or who had the key. The truck was not easy to keep track of, because sometimes it was parked at the office, and sometimes at a job site." Patel further stated: "I felt it was much more efficient to take my own car." Regarding reimbursement, Patel stated that when his "driving was more than just driving around town, [he] asked to use the company credit card to pay for gas, and [Core] let [him] do that about 4 times before this accident." Patel further stated that he "had no problem with [Core] having the benefit of [his] car on the other occasions when [he] traveled for work but did not request reimbursement."

We are not persuaded that plaintiffs' showing is sufficient to create a triable issue of material fact concerning Patel's use of a personal vehicle for work and the doctrine of respondeat superior.

The evidence reflects that Patel needed transportation to carry out some of his job responsibilities. It is undisputed, however, that Patel knew his transportation options included the company truck, public transportation, and his own vehicle. There is no evidence that Core expressly or implicitly required Patel to use his own vehicle. Rather, Patel's declaration in opposition to the motion for summary judgment makes clear that his use of his own vehicle was based on personal preference and his belief that it was "easier" and "more efficient" to use his own vehicle rather than other transportation options. However, "[a] practice adopted for the mutual convenience of the employer and the employee and left to the discretion of the employee . . . does not rise to the status of a requirement of employment . . . ." (*Hinson v. Workmen's Comp. Appeals Bd.* (1974) 42 Cal.App.3d 246, 250-251 (*Hinson*).)

The facts relied on by plaintiffs concerning the company truck, including that there was only one truck and that the arrangement for using it was relatively informal, are insufficient to create a triable issue concerning its availability for use by Patel. Plaintiffs offered no evidence regarding the number of employees for whose use the truck

12

was to be available, or the frequency that others besides Patel might need to use it. Plaintiffs also failed to provide any evidence that Patel had been unsuccessful in trying to locate the vehicle on a given occasion, or that the truck was not available at a time when Patel needed to travel for a work-related purpose. Moreover, even assuming that more than one employee might need access to the vehicle at the same time due to, for example, the existence of two ongoing construction projects, plaintiffs fail to offer any evidence suggesting that the nature of any employee's job duties precluded those employees from coordinating with each other regarding the use of the truck.

In arguing that Core implicitly required Patel to use his personal vehicle, plaintiffs contend that "Patel's job imposed similar driving requirements as those imposed" in *Huntsinger*, *supra*, 22 Cal.App.3d 803, *Richards v. Metropolitan Life Ins. Co.* (1941) 19 Cal.2d 236 (*Richards*), *Smith v. Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 814 (*Smith*), and *Lobo v. Tamco* (2010) 182 Cal.App.4th 297 (*Lobo*), where the courts found sufficient evidence that an employee was acting with the scope of employment. These cases are distinguishable in material respects.

In *Huntsinger*, for example, the employee was a technical service representative who sometimes drove from home to meet with customers before going to the company office, and sometimes met with customers on the way home from the office. (*Huntsinger*, *supra*, 22 Cal.App.3d at p. 806; see also *Richards*, *supra*, 19 Cal.2d at pp. 237, 241 [employee was an insurance salesman who met with policyholders or prospective policyholders before going to the office].) In contrast, the evidence in the present case established that Patel always reported first to a Core office, whether it was located at the site of an ongoing construction project or at the South Market Street location. (See *Henderson v. Adia Services, Inc.* (1986) 182 Cal.App.3d 1069, 1070, 1076 [although the employee reported to work at different jobsites, the employee was acting outside the scope of employment when driving to work]; *Ducey*, *supra*, 25 Cal.3d at pp. 714, 723 [evidence did not establish as a matter of law that the employee was

13

required as a condition of employment to commute to work in a personal car, even though the employee was required to clean model homes in various cities and regularly drove many miles from her residence to such model homes several days a week].)

Further, in *Huntsinger*, although a rental vehicle used by a coworker might have been an alternative to the employee using his own vehicle, the rental vehicle was apparently only available to the employee "at some times." (*Huntsinger*, *supra*, 22 Cal.App.3d at p. 806.) In the present case, as we have explained, plaintiffs failed to present evidence creating a triable issue as to whether the availability of the company truck was such that Patel was implicitly required to use his own vehicle in order to fulfill his job responsibilities.

*Smith* is also distinguishable. In *Smith*, the employee was a social worker whose "immediate supervisor" testified that "every worker was required to furnish his own car, first, so that he could visit his clients on field days, and, second, so that he would be available to see clients in cases of emergency on regular office days." (*Smith*, *supra*, 69 Cal.2d at p. 816.) The court concluded that "the evidence compelled the conclusion that [the] employer required [the employee] to bring his car to work on the morning of" the accident. (*Ibid*.; see *id*. at p. 815.) In contrast, in the present case plaintiffs failed to present any evidence that Core "instructed [Patel] to have his car available on the job every morning." (*Id*. at p. 821.)

*Lobo* is likewise distinguishable. In *Lobo*, the employee's duties included visits to customer sites, no company car was provided for that purpose, and the employee's supervisor testified that the employee was "required to use his personal car to discharge that duty." (*Lobo*, *supra*, 182 Cal.App.4th at p. 302.) In the present case, there was evidence that a company truck was available to Patel to discharge work-related duties that entailed traveling, and there was no evidence that Patel was required to use his own car.

14

Plaintiffs also argue that "Core came to rely upon Mr. Patel's vehicle use, even though it was not technically required." In support of this argument, plaintiffs cite *County of Tulare v. Workers' Comp. Appeals Bd.* (1985) 170 Cal.App.3d 1247 (*County of Tulare*), in which the appellate court affirmed a workers' compensation award for an employee's injuries from a single-car accident while driving to work. (*Id.* at pp. 1249, 1253-1254.) We find plaintiffs' reliance on *County of Tulare* unpersuasive.

In *County of Tulare*, the employee's job duties required the use of a vehicle although she "was not expressly required to use her car for her job." (*County of Tulare*, *supra*, 170 Cal.App.3d at p. 1249.) She was reimbursed for mileage but did not always submit a reimbursement request. (*Ibid.*) Two vehicles were assigned to the employee's department, but they were "unavailable" to her because they were usually being used by others. (*Ibid.*) "The county car pool was also available, but a reservation had to be made at least one day in advance in order to arrange the use of a pool car. The use of employees' cars to run errands, such as the ones [the employee] performed, was an acceptable alternative to the use of pool cars and, in fact, was encouraged by the County for short trips because it cost the County less than it would to use a pool car." (*Ibid.*)

The appellate court determined that "[t]his case falls within the class of cases . . . where an employee uses his own vehicle 'as an accommodation to his employer.' [Citation.] Such a classification implies that the employer benefits from such usage, and that while it is not a requirement of the job, it is an implicit expectation dictated by the job itself. [Citation.] Once an employee has impliedly agreed to accommodate the employer and use his own vehicle, the employer can reasonably come to rely upon its use and expect the employee to make the vehicle available on a regular basis while still not requiring it as a condition of employment. Added to this formulation is the reimbursement of the employee for mileage on the job and the fact the use of the employee's vehicle is to the economic advantage of the employer." (*County of Tulare*, *supra*, 170 Cal.App.3d at p. 1253.) In distinguishing the case from *Hinson*, *supra*,

15

42 Cal.App.3d 246, in which it was determined that the employee's injury did not occur in the course of employment, the appellate court in *County of Tulare* identified several factors, including whether the employer "always had transportation readily available to transport the employees," (*County of Tulare*, *supra*, at p. 1253) whether the employer "expected the employee to bring his own transportation," (*ibid*.) whether the employee was "compensated for use of his own vehicle," (*ibid*.) and whether "it had been to the employer's economic advantage for the employee to use his own vehicle." (*Ibid*.)

In the present case, Core presented evidence that it had a company truck available for Patel's use. Plaintiffs failed to present evidence creating a triable issue concerning the unavailability of that vehicle. There was also no evidence that Core expected Patel to bring his own vehicle to work, nor evidence that it had been to Core's economic advantage for Patel to use his own vehicle rather than the company truck. In the latter regard, plaintiffs offer only speculation regarding the extent to which Core supposedly benefitted economically from Patel's use of his own vehicle. For example, although plaintiffs essentially contend that the costs incurred by Core for Patel's use of his own vehicle were minimal, plaintiffs failed to present any evidence regarding the costs incurred by Core for an employee's use of the company truck. (See *Dollinger*, *supra*, 199 Cal.App.4th at pp. 1144-1145 [a party " 'cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact.' "].) Lastly, the sole fact that Patel received reimbursement for gas on a few occasions did "not automatically make [Core] vicariously liable" to plaintiffs. (*Anderson*, *supra*, 14 Cal.App.4th at p. 260; see also *id*. at p. 261; *Caldwell*, *supra*, 176 Cal.App.3d at p. 1042.)

In sum, plaintiffs failed to present evidence creating a triable issue of material fact as to their theory that Core was vicariously liable under the doctrine of respondeat superior for the alleged tortious injury that Patel caused plaintiff Wang, or for plaintiff

Meng's dependent claim for loss of consortium (see *LeFiell*, *supra*, 55 Cal.4th at p. 285). Summary judgment in Core's favor was therefore proper.

### B. *The Motion for a New Trial*

"A motion for a new trial is appropriate following an order granting summary judgment. [Citations.]" (*Aguilar*, *supra*, 25 Cal.4th at p. 858.) "[A]n order denying a motion for new trial . . . may be reviewed . . . on appeal from the underlying judgment. [Citation.]" (*Walker v*. *Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 19, italics omitted.)

In challenging the trial court's order denying their motion for a new trial, plaintiffs on appeal do not advance any arguments beyond those already made in connection with their contention that the summary judgment motion was incorrectly granted. As we have determined that the trial court properly granted Core's motion for summary judgment, we also conclude that the trial court did not err in denying plaintiffs' motion for a new trial.

## IV.  DISPOSITION

The judgment is affirmed.

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

MÁRQUEZ, J.