Filed 6/23/20; Certified for Publication 7/16/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| TERESA SAVAIKIE et al., | B291120 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC615972) |
| v. | |
| KAISER FOUNDATION HOSPITALS, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Melvin. D. Sandvig, Judge.  Affirmed.

Carpenter, Zuckerman & Rowley, Paul Zuckerman and Robert J. Ounjian for Plaintiffs and Appellants.

Cole Pedroza, Kenneth R. Pedroza, Matthew S. Levinson; Law Offices of Lebeau Thelen and Alan J. Mish for Defendant and Respondent.

————————————

Plaintiffs Teresa, Michael, and Ryan Savaikie appeal from a judgment in favor of defendant Kaiser Foundation Hospitals (Kaiser) after the trial court granted Kaiser's motion for summary judgment. Appellants sued Kaiser for the acts of its volunteer Ralph Steger. Steger struck and killed 14-year-old Wyatt Savaikie as Steger was driving his own vehicle home from an assisted living facility where he provided dog therapy to a Kaiser patient. Appellants acknowledge an employer is not liable for the acts of employees while they are coming to or going from their place of employment, but appellants contend there are triable issues of fact as to whether the "required vehicle use" exception to the coming and going rule applied in this case. Appellants also contend there are triable issues of fact as to whether Kaiser received an "incidental benefit" from Steger's use of his personal vehicle and whether Steger had specially equipped his vehicle to transport his therapy dog; they claim both circumstances are two additional independent exceptions to the coming and going rule. Finally, appellants contend Steger's stop at a credit union on the way home from the therapy session did not insulate Kaiser from vicarious liability for Steger's subsequent accident. We find no triable issues of material fact and affirm the judgment.

## BACKGROUND

On July 16, 2015, Steger drove to an assisted living facility in his own vehicle and provided volunteer pet therapy to a Kaiser patient. After completing the therapy session, Steger drove to a credit union to conduct personal business and then began his drive home. On the way home, Steger struck and killed Wyatt Savaikie while the young man was on foot in a crosswalk.

2

Wyatt's parents Teresa and Michael Savaikie filed this lawsuit alleging multiple causes of action against several defendants. Wyatt's brother, Ryan Savaikie, witnessed the collision and he alleged a claim for negligent infliction of emotional distress.

Appellants settled with defendants City of Santa Clarita, County of Los Angeles, and Southern California Edison. Thereafter, they dismissed the State of California as a defendant. In April 2017 appellants added respondent Kaiser as a defendant, ultimately alleging Kaiser was vicariously liable for Steger's negligence.

In January 2018, Kaiser filed a motion for summary judgment on the ground that Steger was not acting within the scope of his employment at the time of the collision. Kaiser offered evidence that Steger was driving home from the location where he volunteered and argued the going and coming rule applied, that is, an employer was not liable for an employee's negligent acts committed during the commute to or from work.

Appellants opposed summary judgment, arguing the "required vehicle use" exception to the coming and going rule applied; they also asserted two related exceptions, which they refer to as the incidental benefit and special mode of transportation exceptions. They relied in large part on the deposition testimony of Linda Miranda, Kaiser's "volunteer and bereavement director supervisor and coordinator" and Kaiser's designee as the person most qualified to testify about Kaiser's dog therapy program, Steger's participation in that program, and Kaiser's investigation of the accident. Although Miranda testified Kaiser did not require Steger to use his own vehicle to provide pet therapy, appellants contended other portions of her

3

testimony, together with Steger's testimony, create a triable issue of material fact as to whether the required vehicle exception applied.

According to Miranda, Kaiser did not provide transportation for pet therapists or their animals. Pet therapists could use whatever transportation they wished, including public transportation or ride sharing. "So it's not a requirement for them to, you know, for them to take their own vehicle." Miranda did not know whether Steger used his own vehicle to travel to therapy appointments; she did not have this information for any of the pet therapists.

Miranda testified that at the time of the accident in July 2015, Kaiser did not provide mileage reimbursement to volunteer pet therapists. She also testified that if a volunteer used a personal vehicle or supplied Kaiser with a driver's license, the volunteer was annually required to provide proof of vehicle insurance.

Appellants also relied on Steger's deposition testimony. In particular, they relied on this testimony from Steger, who began volunteering in 2009:

"Q: Did you ever operate Kaiser vehicles to go from one location to another to provide pet therapy?

"A: No.

"Q: So their arrangement was that you would drive your own vehicle?

"A: Yes."

Appellants cited Steger's testimony about Kaiser's mileage reimbursement policy. According to Steger, Kaiser "said they had it, but I never took it." Although there is some tension between Steger's testimony on this topic and Miranda's, Steger

did not claim Miranda ever offered him mileage reimbursement. Further, Miranda's testimony was focused on Kaiser's policy in July 2015, as she had only worked for Kaiser for about 4 years and had not explained the program to Steger when he started volunteering in 2009.

Appellants also relied on Steger's testimony about Kaiser's insurance requirements, although that differed slightly from Miranda's explanation of the requirement. Steger stated Kaiser's insurance requirement was "a block thing because there's some people that will take people to places. So they just put us all in there and make us all do the same thing." He clarified that "instead of saying we need this from you and this from you, they say, we need this from everyone." Steger agreed insurance coverage was checked annually.

Steger also gave testimony about how he transported his therapy dog. He put the dog all the way in the back of the vehicle and "hook[ed] her in like a seatbelt back there so she can't move around." There was no barricade between the back area and the seats but "the restraint that I have her on, she can't get up there." He explained: "She had the harness. There's the clip in the back for like a cargo net or something like that. And I have a little leash that's maybe 18 inches long, and I hook her to that."

Finally, appellants argued discovery responses by Kaiser established indisputably that pet therapists provided their own dogs and were responsible for getting themselves and their dogs to the therapy sessions, which occurred at various and changing locations.

The trial court granted Kaiser's motion for summary judgment. The trial court found the going and coming rule applied, and no evidence supported the application of the

5

required vehicle exception or any variation thereof. Plaintiffs timely appealed. Steger is not a party to this appeal.

## DISCUSSION

In granting Kaiser's motion for summary judgement, the trial court ruled that Steger, although a volunteer, was to be treated as a paid employee for purposes of vicarious liability. [1] The court also ruled that to hold Kaiser liable for Steger's accident, Steger must have struck Wyatt in the course and scope of his volunteer work for Kaiser.

Then the trial court found: "The evidence establishes this is not the case. At the time of the accident, Steger had completed his volunteer dog therapy. (*Separate Statement, Fact No. 2.*) Steger had left the location where he was providing dog therapy and had no intention of returning that day. (*Separate Statement, Fact No. 3.*) Steger went to Lockheed Federal Credit Union to make a deposit unrelated to his volunteer work. (*Separate Statement, Fact No. 3.*) After Steger left the credit union, he was going home at the time of the accident. (*Separate Statement, Fact No. 4.*)

The court summarized the general rule: "Based on the 'going and coming' rule, an individual is not considered to be within the scope of his/her duties when going to or coming from his/her place of employment/volunteer work. (*Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, 722 [*(Ducey)*]; *Santa Rosa Junior College v. WCAB* (1985) 40 Cal.3d 345; *Wilson v. WCAB* (1976)

---

[1] (See *Jeffrey E. v. Central Baptist Church* (1988) 197 Cal.App.3d 718, 722, fn. 6.) Kaiser does not dispute this ruling.

6

16 Cal.3d 181; and *Pierson v. Helmerich & Payne Industrial Drilling Co.* (2016) 4 Cal.App.5th 608 [(*Pierson*)].)"

The trial court found: "There is no evidence that the 'required vehicle use" exception to the 'going and coming' rule applies in this case. The exception applies when an employer requires an employee/volunteer to furnish a vehicle for transportation on the job. (*See Ducey*, *supra*, [25 Cal.3d at p.] 723; *Tryer v. Ojai Valley School* (1992) 9 Cal.App.4th 1476, 1482.) The evidence shows that Kaiser Foundation Hospitals did not require Mr. Steger to drive a vehicle to the therapy site. (*See, Stern Declaration* (Opposition), Exh. 1, p. 28, l. 9 through p. 29, l. 2.) The fact that Mr. Steger chose to use his vehicle to transport his therapy dog is insufficient to establish he was required to use his personal vehicle. Based on the evidence, Mr. Steger was not prohibited from using another means of transportation (i.e., walking, taxi, Uber, Lyft, family member, friend). (*See, Stern Declaration, Exh. 1, p. 28, ll. 9-15.*) Transporting the therapy dog does not establish that the required vehicle exception applies. (*Ducey,* [at p.] 714; *Jorge v. Culinary Institute of America* (2016) 3 Cal.App.5th 382, 406 [(*Jorge*)].) The facts that Mr. Steger was required to provide proof of insurance to Kaiser Foundation Hospitals, since he provided them with his driver's license, and that Mr. Steger mistakenly believed he could have received reimbursement for mileage do not establish that the required vehicle exception applies. "

The court also stated: "The fact that an employee travels to different working locations that do not require him/her to travel between different sites during the work period does not trigger the required vehicle exception. (*See Ducey, supra,* [25 Cal.3d at p.] *723; Jorge, supra,* [3 Cal.App.5th at pp.] *397, 401–403, 405;*

7

*Anderson, supra,* [14 Cal.App.4th at pp.] *257, 262; Tryer, supra,* [9 Cal.App.4th at pp.] *1479–80.*)"

Appellants contend the trial court erred because they did present evidence creating a triable issue of fact about whether Steger's travel fell within the required vehicle exception. They claim they presented evidence that Steger's work required the transport of his dog to "various locations set by" Kaiser and Steger "necessarily accomplished this work by using his own, specially-equipped vehicle" and that Kaiser "came to rely on Defendant Steger's use of his own vehicle." Appellants also claim that Steger testified at his deposition "that was the nature of the arrangement and that Kaiser offered to reimburse Defendant Steger for his mileage."

We review a trial court's grant of summary judgment de novo to determine whether there are triable issues of material fact. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.) Like the trial court, we strictly construe the moving papers and liberally construe the opposing papers. We view the moving papers in the light most favorable to appellants. All doubts about the propriety of granting the motion are resolved in favor of denial. (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 717.)

"The rules of law that define the role of inferences in creating a triable issue of material fact are contained in subdivision (c) of Code of Civil Procedure section 437c. When reviewing a motion, the court shall consider the evidence set forth in the papers and 'all inferences reasonably deducible from the evidence.' [Citation.] Generally, when conflicting inferences can be reasonably drawn from the evidence, a triable issue of fact is deemed to exist." (*Pierson*, *supra,* 4 Cal.App.5th at p. 627.)

A.     There Is No Direct Or Circumstantial Evidence That Kaiser Required Steger To Use His Own Vehicle To Volunteer.

"The required-vehicle exception to the going and coming rule and its variants have been given many labels." (*Pierson^ supra*, 4 Cal.App.5th at p. 624.)  Regardless of the label, the exception "covers situations where there is an express or implied employer requirement.  'If an employer *requires* an employee to furnish a vehicle as an express or implied condition of employment, the employee will be in the scope of his employment while commuting to and from the place of his employment.' " (*Id.* at p. 625.)  Whether there is an express or implied requirement " 'can be a question of fact for the jury,' " but "the question of fact sometimes can be decided by a court as a matter of law." (*Id.* at p. 626.)

Kaiser representative Miranda testified Kaiser did not require Steger to use his vehicle.  In their reply brief, appellants contend Steger "testified that he was required to drive his car to his work.  There is no such direct testimony.  Appellants are referring to the following deposition testimony:  Question: "So [Kaiser's] arrangement was that you would drive your own vehicle?"  Steger: "Yes."

It is not reasonable to understand Steger's testimony in the manner appellants suggest.  Common definitions of arrangement are "a preliminary measure" or "preparations" (Merriam-Webster Dict. (2020) <https://www.merriam-webster.com/ dictionary/arrangement> [as of June 19, 2020], archived at <https://perma.cc/UW8S-QLAB>.) and "a plan for how something will happen" or "an agreement between two people or groups about how something happens or will happen." (Cambridge. Dict.

9

(2020) <https://dictionary.cambridge.org/us/dictionary/ english/arrangement> [as of June 19, 2020], archived at <https://perma.cc/XH9R-PRHG>.) Even reading "arrangement" broadly to mean "agreement," an agreement between Kaiser and Steger that Steger would drive his own car would not establish or suggest that driving a personal vehicle was a requirement of the job. It does not contradict Kaiser's testimony that using other methods of transportation, such as Uber or Lyft, was permissible, and thus other "arrangements" or agreements were permissible.

Appellants argue, in effect, that even if Steger's testimony alone is not sufficient to create a triable issue of material fact, that testimony, when considered with certain other evidence, is sufficient to support a reasonable inference that Kaiser required Steger to use his personal vehicle. We disagree.

Appellants point to Steger's testimony that Kaiser offered to reimburse him for mileage. Payment for travel expenses is not evidence of an implied requirement that an employee use his own vehicle, or have it available for use, as a condition of employment. (*Jorge, supra*, 3 Cal.App.5th at p. 405; *Caldwell v. A.R.B., Inc.* (1986) 176 Cal.App.3d 1028, 1042; see *Anderson, supra*, 14 Cal.App.4th at pp. 262–263.) Further, Steger's testimony at most shows Kaiser offered him mileage reimbursement at some point in the past and he declined. There is nothing in his testimony to show that he had any knowledge of Kaiser's policies in July 2015, whereas Kaiser representative Miranda testified Kaiser did not offer mileage reimbursement to volunteers in July 2015. The facts in the record do not support the inferences appellants wanted the trial court to draw.

10

Appellants contend a relevant fact is that Kaiser confirmed every year that Steger possessed liability insurance for his personal vehicle. Steger believed Kaiser checked such insurance for all volunteers as a matter of administrative convenience, but was only concerned about coverage for volunteers who actually transported patients. Kaiser's representative testified Kaiser checked insurance coverage for all volunteers who provided a driver's license or were using their own vehicles. The testimony in the record about Kaiser's policy on insurance coverage does not support a reasonable inference that Kaiser required Steger to use his personal vehicle to provide pet therapy.

In addition, appellants see probative value in Kaiser's admission that it was Steger's responsibility to provide the therapy dog and transport the dog to the therapy session. They characterize the dog as necessary work material. Merely transporting work material does not establish the required vehicle exception. (*Jorge, supra*, 3 Cal.App.5th at p. 406; *Ducey, supra*, 25 Cal.3d at p. 714.) No doubt when work material is an animal, certain forms of transportation, such as public buses, may not be available. There is no evidence in the record, however, that transporting an animal could only be done by one form of transportation, specifically the employee's own vehicle. Kaiser did not object to Steger using Uber or Lyft, for example. Thus, Steger's need to transport work material does not support a reasonable inference that Kaiser required Steger to use his own personal vehicle to provide pet therapy.

Appellants also look to the fact that Steger provided pet therapy at "various" addresses. As we discuss in more detail below, "the need to show up for work at different sites [does not render] the employee's commute extraordinary—or for the benefit

11

of the employer." (*Jorge, supra*, 3 Cal.App.5th at p. 405 ["the fact the employee reported to work at different, and constantly changing, remote locations did not make his regular commute to and from work part of his job"].)

The evidence viewed as a whole is no more compelling than when considered item by item. It shows Kaiser permitted pet therapy volunteers to select the means of transportation for themselves and their animals, assigned the therapists to provide therapy at a variety of locations, checked the liability insurance of all Kaiser volunteers who either provided a driver's license or used their own vehicles, had at one time offered to reimburse Steger for his mileage, and had an "arrangement" with Steger that he would use his own vehicle. These facts do not support a reasonable inference that Kaiser expressly or impliedly required Steger to use his own vehicle as a condition of his volunteer work.

B.    Steger's Use of His Personal Vehicle Did Not Provide An Incidental Benefit To Kaiser.

Appellants suggest there is a variation of the vehicle use exception which focuses on whether the employer derives an incidental benefit from the employee's use of the vehicle.[2] We question whether this is an independent basis for the exception (see *Pierson, supra*, 4 Cal.App.5th at p. 625 [phrase "incidental benefit exception" is used as the equivalent of the required-vehicle exception]), rather than merely a factor to be considered

_____

[2]    Kaiser argues appellants did not raise the incidental benefit argument in the trial court. Appellants correctly point out they referred to the concept of incidental benefit in their written opposition to summary judgment. This sufficiently preserves the issue for appeal.

12

in deciding whether an implied vehicle use requirement exists. In all four cases cited by appellants which discuss "incidental benefit," the courts found an express or implied requirement that the employee provide a vehicle as a condition of employment.

In *Lobo v. Tamco* (2010) 182 Cal.App.4th 297 (*Lobo*), the court acknowledged a " 'well-known exception to the going-and-coming rule arises *where the use of the car gives some incidental benefit to the employer.*' " (*Id.* at. p. 301.) The court explained: "The exception can apply if the use of a personally owned vehicle is either an express or implied condition of employment (*Hinojosa v. Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 152 [104 Cal.Rptr. 456, 501 P.2d 1176] [(*Hinojosa*)].)" (*Lobo,* at p. 301.) That was the situation before the court in *Lobo*. The employee's supervisor "testified that [the employee's] physical presence was essential when customers had quality complaints because he was the sole employee with the expertise to determine whether products were defective. [The supervisor] testified that [the employee] is *required* to use his personal car to discharge that duty." (*Id.* at p. 302, italics added.)[3]

Use of a personal vehicle was also required as a condition of employment in *Huntsinger v. Glass Containers Corp.* (1972) 22 Cal.App.3d 803. In that case, the employee "had duties both in the office and in the field; he was *required* to use his vehicle for the field work [although] there was no requirement that he report

---

[3]     As the court in *Lobo* indicates, the *Hinojosa* Court found: "The condition implicit in the employment itself dictated the use of car transport . . . . To get from one noncontiguous field to another within the work day *required* the use of automobile transport." (*Hinojosa, supra,* 8 Cal.3d at p. 161.) The employer did not provide transportation. (*Ibid.*)

13

to the office before engaging in his field duties." (*Id*. at p. 809, italics added.) The *Huntsinger* court explained the exception to the coming and going rule applies "when a business enterprise *requires* an employee to drive to and from its office in order to have his vehicle available for company business during the day." (*Id*. at p. 810, italics added.) Similarly, in *State Farm Mut. Auto. Ins. Co. v. Haight* (1988) 205 Cal.App.3d 223, it was "an express condition of his employment that [the employee] use the vehicle in attending to his duties." (*Id*. at p. 242.) The employee "had duties both in the office and in the field. He was required to use his vehicle to travel to work sites. He delivered materials in his vehicle to the work site. He was required to travel throughout the county and sometimes outside the county." (*Ibid*.)

As we have just discussed, the evidence presented by appellants does not support a reasonable inference that Steger was required to drive his own vehicle to therapy sessions. Thus, appellants have not shown a triable issue of material fact as to whether the implied benefit exception as applied in *Lobo*, *Hinojosa*, *Huntsinger* and *State Farm* pertains to this case.

We note the court in *Lobo* stated in dicta that an incidental benefit exception could also apply "if the employee has agreed, expressly or implicitly, to make the vehicle available as an accommodation to the employer and the employer has 'reasonably come to rely upon its use and [to] expect the employee to make the vehicle available on a regular basis while still not requiring it as a condition of employment.' " (*Lobo, supra,* 182 Cal.App.4th at p. 301.)

Here, there is no evidence Kaiser encouraged or relied on Steger's use of his own car in connection with his volunteer work. Kaiser's representative testified volunteers were free to choose

14

their own method of transportation.  There is no evidence Kaiser derived a different or additional benefit from Steger's use of his car to commute to the therapy sessions than it would have received had he used any other form of transportation.  We find no triable issue of material fact as to whether this variation of the implied benefit exception applies.

In *Lobo, Hinojosa, Huntsinger and State Farm*, the courts describe the incidental benefit to the employer as the employee's use of the vehicle during working hours to carry out the employer's business.  This is very different from the employee's use of a vehicle to commute from the employee's home to his or her work site.  In the present case, Steger was not required to drive his vehicle to Kaiser to have it available during the work day.  There is no evidence he went from Kaiser to a therapy session, from a therapy session to Kaiser, or from therapy session to therapy session. At most the record suggests he went to Kaiser for an occasional meeting of volunteers and volunteered at Kaiser for, at most, a few hours a week.

Steger was required to travel to different sites to provide therapy sessions and the locations changed because the therapy was not long-term.  "[T]he need to show up for work at different sites [does not render] the employee's commute extraordinary—or for the benefit of the employer.  In *Anderson*, a lineman for Pacific Gas and Electric Company (PG&E) worked out of various locations.  He would report to work at a company point of assembly, traveling there in his own vehicle and then traveling on to various job sites in a company vehicle. . . .  Affirming summary judgment for PG&E based on the going and coming rule, the Court of Appeal concluded that the fact the employee reported to work at different, and constantly changing, remote

locations did not make his regular commute to and from work part of his job." (*Jorge, supra,* 3 Cal.App.5th at p. 405.)

C.     Steger Did Not Use A Special Mode of Transportation.

Appellants suggest a "special mode of transportation" exception to the coming and going rule applies here because Steger specially equipped his vehicle to transport his dog. (See *Wilson v. Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 181, 185 [Transporting the materials "may have been essential to applicant's employment, but unless such materials require a special . . . mode of transportation . . . their mere transport does not warrant exception from the going and coming rule."].) Assuming for the sake of argument that using a specially equipped vehicle is alone sufficient to create an exception to the coming and going rule, there is no evidence Steger had such a vehicle.

Appellants claim Steger used "a particular harness and clips" and the vehicle was "specially-equipped with a harness system." Steger's testimony is the only evidence of how his dog was transported and he does not describe modification to or installation of special equipment to transport his dog. Steger described the clip as "for like a cargo net or something like that" which indicates the clip was an existing part of the vehicle, not a modification Steger made to it. As for the harness, Steger testified simply, "She has the harness." This in no way suggests the harness was permanently installed in or attached to the car or in any way modified the car. Steger stated he had "a little leash that's maybe 18 inches long, and I hook her to that." This further demonstrates there were no modifications to Steger's vehicle: Steger used a lead to hook his dog's harness to a clip in the vehicle.

16

Further, appellants have not provided evidence that a specially outfitted vehicle was necessary to transport Steger's therapy dog or that Kaiser required Steger to use a specially outfitted vehicle.

D.    Personal Travel

If the going and coming rule does not apply to Steger's drive, Kaiser contends Steger's stop at the credit union was not in the course and scope of his volunteering and so Kaiser was not vicariously liable for the subsequent collision.  Because we find the coming and going rule applies to Steger's drive, we do not consider this claim.

## DISPOSITION

The judgment is affirmed.  Respondent Kaiser Foundation Hospitals is awarded costs on appeal.


STRATTON, J.

We concur:


BIGELOW, P. J.


GRIMES, J.

17

Filed 7/16/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| TERESA SAVAIKIE et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> KAISER FOUNDATION HOSPITALS, <br><br> Defendant and Respondent. | B291120 <br><br> (Los Angeles County Super. Ct. No. BC615972) <br><br> ORDER CERTIFYING OPINION FOR PUBLICATION <br><br> [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed on June 23, 2020, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in the judgment.

_____
BIGELOW, P. J.          GRIMES, J.          STRATTON, J.